## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

EDWIN CALDERÓN-TORRES; <u>ET AL.</u>,

        Plaintiffs,

        v.

SIG SAUER, INC.,

        Defendant.

CIVIL NO. 24-1441 (PAD)

## MEMORANDUM AND ORDER

Puerto Rico Police Officer Edwin Calderón-Torres and his family sued SIG Sauer, Inc. ("SIG"), alleging that Calderón-Torres' 9mm caliber SIG Sauer P320 service pistol manufactured by SIG discharged itself due to a factory defect and wounded him, causing plaintiffs damages (Docket No. 1, pp. 3-5). Discovery has been contentious. On September 8, 2025, SIG filed a Motion to Compel (Docket No. 48) which the court granted in part (Docket No. 58). Before the court is SIG's "Motion for Sanctions" (Docket No. 77). According to SIG, plaintiffs failed to comply with the court's Memorandum and Order (M&O) granting SIG's Motion to Compel. <u>Id</u>. Plaintiffs responded (Docket No. 80) and SIG replied (Docket No. 82). For the reasons explained below, the motion must be granted in part and denied in part.

### I.    BACKGROUND

Co-plaintiffs Gladys Torres, Jacob Calderón Rodríguez, and Samuel Calderón Torres (jointly, "the family member plaintiffs") were deposed in June 2025. Shortly thereafter, on June 20, 2025, SIG sent an email to plaintiffs' counsel asking for documents or information referred to during the depositions (Docket No. 48-1, p. 23). Furthermore, SIG noted that during the depositions, it was agreed that "if any of the requested documents or information did not exist or

<u>Calderón-Torres; et al.</u> v. <u>SIG Sauer, Inc.</u>,
Civil No. 24-1441
Page 2

were not in the possession of any of the plaintiffs, a negative certification to that effect would accompany the production." <u>Id</u>.   A partial response was received on July 2, 2025.  <u>Id</u>.  On August 1, 2025, SIG re-asserted the requests.  <u>Id</u>.  A meet-and-confer was held on August 4, 2025, where plaintiffs agreed to produce the requested documents and/or sworn statements by August 21, 2025. <u>Id</u>., p. 10.  To this end, it was agreed that the response would be "substantive and include either the production of documents and information requested during the depositions or the necessary certifications that the requested documents do not exist."  <u>Id</u>.

On August 5, 2025, plaintiffs' counsel sent an email stating "Please find attached the remaining documents related to the Deposition issue. If you might have any other documents required, please let me know. The enclosed are the only ones Jacob produced" (Docket No. 48-1, p. 17-18).  In response, on August 14, 2025, SIG sent plaintiffs' counsel another email asserting that the production was incomplete, and that no negative certification was included.  <u>Id</u>., pp. 1-3. So, August 21, 2025 – the deadline agreed-on during the August 4 meet-and-confer – passed with no word from plaintiffs.  On August 28, 2025, SIG sent yet another detailed email (Docket No. 48-1, pp. 1-4) but ultimately ended up filing the motion to compel (Docket No. 48) on September 8, 2025.

As to this component of the motion to compel, plaintiffs' only response was to state that "the information was submitted by brother counsel Izurieta, but the same was not "under penalty of perjury. Plaintiffs will submit the same within the next 15 days" (Docket No. 51, p. 2).  With this in mind, in its M&O, the court took plaintiffs at their word and ruled that the information and certifications were to be produced not later than COB on October 10, 2025" (Docket No. 58, p. 4). The court also warned plaintiffs that failure to comply would have consequences.  <u>Id</u>.

On October 10, 2025, plaintiffs' counsel served three sworn statements —each executed by one of the three family member plaintiff— along with a list of documents purportedly included in a USB drive.  See, Docket No. 58, p. 5.  The sworn statements all follow the same boilerplate language and state in part: "I can certify that any information not included in the [USB] device is because it was not stored or it does not exist."  See, Docket Nos. 78-1; 78-2; 78-3.  But there was no USB drive attached.  Id.  SIG informed plaintiffs' counsel that no USB drive was attached, and on October 14, 2025, the USB drive was finally produced to SIG.  Id.  But after reviewing it, SIG realized that the USB only contained duplicates of information already produced.  Id.  Hence, SIG filed its "Motion for Sanctions" (Docket No. 78), requesting that the court compel the family member plaintiffs to respond to SIG's discovery requests and impose sanctions for failure to comply with the court's M&O.

In response, plaintiffs argue that they did comply with the M&O (Docket No. 80). Essentially, they assert that they had previously produced all they have and that they do not have any other evidence to produce.  See, generally, id.  Therefore, they contend that the sworn statements to the effect that anything not in the UBS drive was "not stored or does not exist" satisfy their obligations.  Id.

## II.    DISCUSSION

The court has reviewed plaintiffs' discovery responses and the sworn statements.  Although there is nothing to suggest that the plaintiffs themselves are not cooperating, their attorneys have been cutting corners and not complying with the Rules.  SIG made specific requests to each family member plaintiff.  See, Docket No. 48-1, pp. 23-26.  Federal Rule of Civil Procedure 34 provides that the responding party must respond to each "item or category" requested.  Fed. R. Civ. P. 34(b)(2)(B).  Accordingly, inviting defendants to "sift through documents previously delivered in

search of the documents that they requested under Rule 34" falls short of compliance with discovery obligations." Mulero-Abreu v. Puerto Rico Police Dep't, 675 F.3d 88, 93 (1st Cir. 2012). At the very least, defendants are "entitled to responses or objections addressed to **each** item or category of items." Id. (quoting Fed. R. Civ. P. 34(b)(2)(B) (internal quotation marks omitted)(emphasis added). This is elementary "Discovery 101" federal practice. Leaving defendant to find a "needle in a haystack" is unacceptable. Id. Yet, that is what plaintiffs' counsel did.

Plaintiffs' counsel stacked a bunch of documents with no reference to which request each pertained and waited for SIG to sort through it.[1] Similarly, the sworn statements do not state specifically which category of documents are not in plaintiff's "possession, custody, or control" or which had already been produced. See, Fed. R. Civ. P. 34(a)(1). Instead, they simply state that anything not in the USB "was not saved" or "does not exist." So, to recap, plaintiffs' counsel simply copy-pasted a previous production to a USB and drafted boilerplate sworn statements for each one of the three family member plaintiffs stating that anything not in the USB doesn't exist. They claim that this minimal effort satisfied their discovery obligations. Not so.

In this light, by **January 21, 2026**, plaintiffs shall deliver to SIG supplemental responses under oath to **each** precise request posed by SIG. See, Docket No. 48-1, p. 23.[2] Each plaintiff shall state precisely which documents are responsive to each request and reference them accordingly.[3] If the requested documents or information are not in a plaintiff's "possession,

---

[1] SIG, to its credit, performed the tedious manual review prior to seeking court intervention. Nevertheless, it should not have gotten that far.

[2] SIG specified which requests pertain to each individual plaintiff. Thus, the responses need not be triplicated. Rather, each individual plaintiff must respond to the requests addressed at him or her. See, Docket No. 48-1, p. 23.

[3] The standard operating procedure in this District is to use Bates numbers on every piece of produced evidence so as to be able to make easy reference. It seems to the court that this practice has not been followed by plaintiffs here.

<u>Calderón-Torres; et al.</u> v. <u>SIG Sauer, Inc.,</u>
Civil No. 24-1441
Page 5

custody, or control" then he or she shall so state.  Conversely, if responsive documents have

previously been produced, plaintiffs shall point directly and specifically to them.  Failure to comply

**<u>will</u>** result in sanctions.

As to sanctions, the court already warned plaintiffs that "failure to comply will have

consequences" (Docket No. 58, p. 4).  Thus, by January 21, 2026, plaintiffs shall also show cause

as to why they should not be sanctioned under Fed. R. Civ. P. 37 and/or the court's inherent power.[4]

### III.    CONCLUSION

For the reasons stated, SIG's "Motion for Sanctions" (Docket No. 77) is GRANTED IN

PART.[5]  By **January 21, 2026**, plaintiffs must supplement their responses to comply with this

Memorandum and Order and the Federal Rules of Civil procedure and show cause as to why

sanctions should not be imposed against them.

**SO ORDERED.**

In San Juan, Puerto Rico, this 8th day of January 2026.

<u>s/Pedro A. Delgado-Hernández</u>
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge

---

[4] The court has empathy with the individual plaintiffs.  They are humble people with a tiny fraction of the capital that SIG has to litigate this case.  They are entitled to a vigorous, diligent, and responsible representation. But their counsel, unfortunately, have not lived up to this responsibility.  <u>See</u>, Docket No. 58, p. 6 (the "record currently before the court, shows an unacceptable amount of ignored deadlines, broken agreements, and foot-dragging by plaintiffs").  The court sincerely expects this track record to improve.

[5] It is not granted in full at this time because the court is giving plaintiffs an opportunity to show cause as to why sanctions should not be imposed.